**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 7** |
| **KERIE LEEANN BENSON,** | ) | |
| | ) | **Case No. 16-70245** |
| Debtor. | ) | |
| **KERIE LEEANN BENSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 16-07023** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on Cross-Motions for Summary Judgment filed by

the Debtor, Kerie LeeAnn Benson (the "Debtor"), and the United States of America, represented

by trial counsel of the Tax Division of the Department of Justice.  The parties submitted a joint

stipulation of facts, and each has submitted well-reasoned briefs on the issues presented.  The

Court heard oral argument on February 21, 2017 and the matter is ripe for resolution.

## FACTUAL BACKGROUND

Kerie LeeAnn Benson filed her voluntary petition under Chapter 7 of the Bankruptcy

Code on March 2, 2016 along with all required schedules. On Schedule E/F, the Debtor

identified the Internal Revenue Service (the "IRS") as a creditor holding unsecured claims for

federal income taxes for the 2006 and 2011 tax years in the cumulative amount of $12,730.26.

The parties agree that the federal income tax liabilities for 2006 and 2011 were non-priority claims.

According to the IRS's records, the Debtor filed her 2006 federal income tax return on June 4, 2007 and self-reported $16,221.00 in income tax liabilities. As of May 9, 2016, a date which will become important later, the Debtor still owed $10,882.18 in federal income tax liabilities for the 2006 tax year.

On Schedules A/B and C, the Debtor listed her expected federal income tax refund for the 2015 tax year as $1.00 and claimed it as exempt pursuant to Va. Code Ann. § 34-4. The Chapter 7 Trustee conducted the Section 341 meeting of creditors on April 8, 2016. The Debtor then filed a homestead deed with the Clerk of the Circuit Court of Pulaski County, Virginia on April 11, 2016 claiming $1.00 of her 2015 federal income tax refund as exempt.

The Debtor filed her income tax return for the 2015 tax year with the IRS on April 16, 2016. After filing this return, the Debtor believed she was due a federal income tax refund of $967.00. The Debtor amended her Schedules A/B and C on April 20, 2016 to reflect her expected refund and, on April 25, 2016, amended her homestead deed to claim as exempt $967.00 of her expected 2015 federal income tax refund.

However, after applying the Earned Income Tax Credit, the Debtor discovered she had an overpayment of $6,417.00 for the 2015 tax year.  When the Debtor became aware of the overpayment, she believed that she was due a refund of $6,417.00. Accordingly, she amended Schedules A/B and C for a second time on May 10, 2016 and claimed $6,417.00 of her expected refund as exempt under Va. Code Ann. §§ 34-26(9) and 34-4.[1]  On May 19, 2016, the Debtor

---

[1] An Earned Income Credit is a refundable tax credit provided for low income workers. The credit is based on earned income which includes wages, salaries, and other employee compensation, plus earnings from self-employment.  *See* 26 U.S.C. § 32.  The Earned Income Credit is a refundable credit that is treated as a payment of tax. The credit is refunded as if it were part of a tax overpayment.  *In re Whitmer*, 228 B.R. 841, 842 n.2 (Bankr.

further amended her homestead deed to claim $5,993.00 of her expected refund as exempt. The

Debtor also amended Schedule C on May 20, 2016 to increase her claimed exemption under Va.

Code Ann. § 34-4.

However, the IRS processed the Debtor's 2015 tax return on May 9, 2016. As of May 9,

2016, the Debtor had an overpayment of $6,417.00, and the IRS offset the overpayment by the

full amount against the 2006 tax liability.  Also on May 9, 2016, the IRS mailed a "Notice CP49"

to the Debtor informing her that "[w]e applied $6,417.00 of your 2015 Form 1040 overpayment

to an amount owed for 2006. As a result, the amount you owe for 2006 is $4,465.18." *See* Ex. D.

The Debtor claimed her refund as exempt because she intended to assert an exemption in

any overpayment she had with respect to her federal income tax liability for the tax year 2015.

The parties do not agree on the question of whether the Debtor could shield the 2015 federal

income tax overpayment from offset under 26 U.S.C. § 6402 by claiming the overpayment as

exempt and by recording a homestead deed. The United States agrees it did not file an objection

to any of the Debtor's claimed exemptions on Schedule C.

<u>CONCLUSIONS OF LAW</u>

I.    <u>Jurisdiction and Sovereign Immunity</u>

As a threshold matter, the IRS contends that this Court lacks jurisdiction over this matter

because this is an action for a refund of a tax overpayment and the United States has not waived

its sovereign immunity.  Instead, the IRS argues that the Debtor's recourse, if any, is limited to a

---

W.D. Va. 1998); *see also In re Davis,* 136 B.R. 203, 205 (Bankr. S. D. Iowa 1991).  Va. Code Ann. § 34-26(9)
provides that "[i]n addition to the exemptions provided in Chapter 2 (§ 34-4 et seq.), every householder shall be
entitled to hold exempt from creditor process the following enumerated items: . . . 9. Those portions of a tax refund
or governmental payment attributable to the Child Tax Credit or Additional Child Tax Credit pursuant to § 24 of the
Internal Revenue Code of 1986, as amended, or the Earned Income Credit pursuant to § 32 of the Internal Revenue
Code of 1986, as amended."  This Code section provides an exemption in addition to the homestead exemption
found in Va. Code Ann. § 34-4.

suit in District Court under 28 U.S.C. § 1346(a)(1) or in the Court of Federal Claims under 28

U.S.C. § 1491.  *See* United States' Memorandum in Support of its Motion for Summary

Judgment ("IRS Brief"), at p. 8.  The Court disagrees.

The Debtor initiated this action under 11 U.S.C. § 522(c), seeking turnover of an alleged

improper offset by the United States against a federal income tax overpayment by the Debtor.

(Complaint, ¶¶ 16–25).  Section 106(a) of the Bankruptcy Code is a specific waiver of sovereign

immunity.  That section states as follows:

> (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
> (1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.
> (2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.
> (3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of **section 2412(d)(2)(A) of title 28**.
> (4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.
> (5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

11 U.S.C. § 106(a).  Because the IRS and the United States are governmental units within the

meaning of this provision, they have waived immunity as set forth therein.  *See* 11 U.S.C.

§ 101(27); *Harchar v. United States (In re Harchar)*, Case No. 98-13277, Adv. Proc. No. 00-1184, 2006 WL 3196846 (Bankr. N.D. Ohio Oct. 4, 2006).

The IRS observes that this case is really about 11 U.S.C. § 505, which addresses the determination of tax liabilities, and is within Section 106's enumerated waiver provisions. However, the IRS contends that the Debtor does not fit within the strictures of Section 505, in that Section 505 only addresses the trustee's ability to seek a refund for the benefit of the estate after a specified time and is devoid of any reference to the Debtor's ability to seek a refund. *See* 11 U.S.C. § 505(a)(2)(B). Thus, because the Debtor here does not fall within the allowable parameters of Section 505, she does not fall within the immunity waiver of Section 106. This is too narrow of a reading of Section 106(a).[2]

The issue is not whether the Debtor or the estate was entitled to a refund. Indeed, the IRS conceded at oral argument that but for the setoff, the Debtor would have been entitled to a refund in the amount it offset from the tax overpayment. Rather, this case is about the enforceability of an exemption and how it intersects with the IRS's ability to exercise a setoff. At least two of the statutes expressly enumerated in Section 106(a), 11 U.S.C. § 522 and 11 U.S.C. § 553, are directly implicated in this case, wherein the Court is asked to determine whether the Debtor has an enforceable exemption in the tax overpayment that entitles her to a refund over the IRS's claim of offset. The Court is not being asked to calculate the Debtor's tax liability of any year in

---

[2] Indeed this may be too narrow a reading of Section 505 as well. The Fifth Circuit addressed this question in *In re Luongo*, 259 F.3d 323 (5th Cir. 2001), and held that the IRS's narrow reading of the statute was "contrary to the broad grant of jurisdiction in Section 505(a)(1) . . . ." *Id.* at 328. Judge Garza dissented with this view and would have held that the court lacked jurisdiction to hear a debtor's claim for a refund that did not benefit the estate. *Id.* at 336 (Garza, J., dissenting). Ultimately the Court need not reach the issue of the breadth of Section 505 because, as discussed further in this Opinion, the critical aspect of this case lies not in Section 505 but rather in the interplay between Sections 522 and 553, both of which have independent waivers of sovereign immunity contained in Section 106(a). In addition, the Court notes that each party asks the Court to follow only a portion of the *Luongo* decision. While the IRS urges the Court to adopt the reasoning of Judge Garza's dissent as to sovereign immunity, it asks the Court to follow the majority's decision regarding the merits of the underlying claim. By contrast, the Debtor urges the Court to adopt the majority's reasoning as to sovereign immunity, yet reject the majority's reasoning as to the merits of the underlying claim.

any manner.  Those issues are stipulated.  Instead, the issues at hand go to the crux of the

functions of Sections 522 and 553, both expressly within the Section 106 waiver provisions.

Moreover, Congress went further, adding to Section 106 the provision that the court "may hear

and determine any issue arising with respect to the application" of those sections to the IRS.  11

U.S.C. § 106(a)(2).  In addition, the court may issue an order or judgment against the IRS, 11

U.S.C. § 106(a)(3), and may enforce that order or judgment, 11 U.S.C. § 106(a)(4).[3]

Such an application of Section 106 dovetails with a practical view of the interplay of the

Bankruptcy Code and the tax laws in connection with a debtor before the bankruptcy court.  The

IRS is alleged to have taken action post-petition to assert a pre-petition claim against the Debtor

against an asset the Debtor contends she has exempted from the estate—an action which it

contends is preserved by an express provision of the Bankruptcy Code, 11 U.S.C. § 553.  *See*

IRS Brief, pp.10–12. On the other hand, the Debtor contends the action taken by the IRS runs

afoul of the Debtor's right to exempt that asset from the estate by the application of express

provisions of the Bankruptcy Code and of applicable state law.  *See* 11 U.S.C. § 522 and Va.

Code Ann. §§ 34-4 and 34-26(9).[4]  *See* Benson's Memorandum in Support of Motion for

Summary Judgment ("Debtor's Brief"), at pp. 6–12.  To this Court, the obvious purpose of

Section 106(a), and the most reasonable interpretation to give effect to its provisions, is to bring

---

[3] Former Section 106 was amended in 1994 to expressly provide for a waiver of sovereign immunity by
governmental units with respect to monetary recoveries as well as declaratory and injunctive relief.  It effectively
overruled *Hoffman v. Connecticut Dep't of Income Maintenance*, 492 U.S. 96 (1989), and *United States v. Nordic
Village, Inc.*, 503 U.S. 30 (1992).

[4] Upon the filing of a petition for bankruptcy, all of the debtor's legal and equitable interests in property become part
of the bankruptcy estate.  *See* 11 U.S.C. § 541.  The debtor may, however, claim certain real and personal property
as exempt from the estate.  11 U.S.C. § 522(b). If a state chooses to opt out of the federal exemption scheme detailed
in 11 U.S.C. § 522(d), "any property that is exempt under . . . State or local law" is excluded from the estate. 11
U.S.C. § 522(b)(3)(A); *see also Zimmerman v. Morgan*, 689 F.2d 471, 472 (4th Cir. 1982)(citing prior version of
Code provision).  Because the Commonwealth of Virginia has opted out of the federal exemption scheme, *see* Va.
Code Ann. § 34–3.1, the Debtor here had to claim her exemptions in compliance with Virginia law.  *See In re
Nguyen*, 211 F.3d 105, 107 (4th Cir. 2000).

Case 16-07023   Doc 33   Filed 04/03/17   Entered 04/03/17 14:57:46   Desc Main
Document      Page 7 of 21

adjudication of all those matters under one roof— that of the bankruptcy court. Further, sending

the Debtor to District Court or to the Court of Federal Claims to initiate a separate cause of

action for a federal tax refund which the Debtor has claimed exempt, would not be a practical or

cost-effective use of a debtor's scarce financial resources. It would also not be an efficient use of

judicial resources, nor would it foster the fundamental bankruptcy concept of a "fresh start" for a

debtor. *See Rousey v. Jacoway*, 544 U.S. 320, 325 (2005) ("To help the debtor obtain a fresh

start, the Bankruptcy Code permits him to withdraw from the estate certain interests in property,

such as his car or home, up to certain values."); *see also Schwab v. Reilly*, 560 U.S. 770, 791–92

(2010). Moreover, consistent with the Bankruptcy Code's goal of providing a "fresh start" and

central forum for dispute resolution, the Fourth Circuit has observed that:

> [B]ankruptcy too represents a fundamental public policy. Grounded in the
> Constitution, bankruptcy provides debtors with a fresh start and creditors with an
> equitable distribution of the debtor's assets. To those ends, a principal purpose of
> the Bankruptcy Code is to provide debtors and creditors with "the prompt and
> effectual administration and settlement of the [debtor's] estate." *Katchen,* 382
> U.S. at 328, 86 S.Ct. 467; *see also Celotex,* 514 U.S. at 308, 115 S.Ct. 1493.
> Similarly, a principal purpose of the Bankruptcy Code is also to centralize
> disputes over the debtor's assets and obligations in one forum, thus protecting
> both debtors and creditors from piecemeal litigation and conflicting judgments.
> *See Phillips v. Congelton, L.L.C. (In re White Mountain Mining Co.),* 403 F.3d
> 164, 169–70 (4th Cir. 2005); *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 998 (4th
> Cir. 1986). "Ease and centrality of administration are thus foundational
> characteristics of bankruptcy law." *French v. Liebmann (In re French),* 440 F.3d
> 145, 154–55 (4th Cir. 2006) (Wilkinson, J., concurring).

*Moses v. CashCall, Inc.*, 781 F.3d 63, 72 (4th Cir. 2015); *see also Board v. AMF Bowling*

*Worldwide, Inc.,* 533 B.R. 144, 147 (E.D. Va. 2015). Section 106(a) and its abrogation of

sovereign immunity are consistent with these goals, not at cross-purposes. For all the above

reasons, the Court finds sovereign immunity is abrogated as to the resolution of the matters

before the Court and that this Court has jurisdiction to proceed to resolve these matters on the

merits.

II.  <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56, applicable in adversary proceedings through Federal

Rule of Bankruptcy Procedure 7056, states that "[t]he court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and that the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   "When faced with cross-motions

for summary judgment, the court must review each motion separately on its own merits 'to

determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v.*

*Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris Inc. v. Harshbarger*, 122

F.3d 58, 62 n.4 (1st Cir. 1997)).  "When considering each individual motion, the court must take

care to 'resolve all factual disputes and any competing, rational inferences in the light most

favorable' to the party opposing that motion." *Rossignol*, 316 F.3d at 523 (citing *Wightman v.*

*Springfield Terminal Ry. Co.,* 100 F.3d 228, 230 (1st Cir. 1996)).

III.  <u>The Intersection of IRS Setoff Rights, Property of the Estate and Exemption</u>
<u>Rights</u>

The Court is once against tasked with determining the nature of the rights that a debtor

has in a tax overpayment, including exemption rights, and how those rights mesh with

governmental setoff rights in tax refunds.  In doing so, the Court does not write on a clean slate.

Similar issues were recently addressed in this Court in *Addison v. United States Dep't of*

*Agriculture (In re Addison)*, 533 B.R. 520 (Bankr. W.D. Va. 2015).[5]  In addition, Chief

Bankruptcy Judge Connelly of this district considered the issue in *Sexton v. Dep't of Treasury (In*

*re Sexton),* 508 B.R. 646 (Bankr. W.D. Va. 2014).   More recently, judges in the Eastern District

of Virginia have addressed the issue in *Copley v. United States (In re Copley)*, 547 B.R. 176

---

[5] *Addison* was affirmed on appeal by the District Court in *In re Addison*, Case No. 1:15CV00041, 2016 WL 223771
(W.D. Va. Jan. 19, 2016). However, the decision on appeal focused on the stay violation aspect of the case, and did
not specifically address the interplay between 11 U.S.C. §§ 553 and 522.

(Bankr. E.D. Va. 2016) (Phillips, J.), and *In re Porter*, 562 B.R. 658 (Bankr. E.D. Va. 2016)

(Kenney, J.).   That the slate is not clean does not make this issue any less challenging.[6]

The IRS's position in all cases, including this matter, is straightforward.  As stated in

*Porter*, "the IRS argues that the Debtor has no legal right to a refund until after the IRS applies

the overpayment to any deficiency."  *Porter*, 562 B.R. at 660.  Or, as this Court previously stated

in *Addison*, the IRS's position is that "the Debtor's interest can rise no higher than the net

remaining after the offset." *Addison*, 533 B.R. at 527.  The IRS strenuously—but respectfully—

believes that *Addison, Sexton, Copley*, and *Porter* were all wrongly decided, and that the Court

should revisit its prior analysis and rule that the offset rights of the IRS triumph over a debtor's

right to claim an exemption in a tax refund. The bottom line is that if the entire refund is applied

against past due taxes, there is nothing left in which a debtor has an interest.   Simply put, an

exemption claimed in nothing is worth nothing.

The case law and statutory framework underlying the present dispute is described in

detail in the various cases mentioned above, but it will be summarized again here.  As stated in

*Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18–19 (1995), "[t]he right of setoff (also

called offset) allows entities that owe each other money to apply their mutual debts against each

other, thereby avoiding the absurdity of making A pay B when B owes A." (citations omitted).

The Bankruptcy Code addresses a creditor's right of setoff in 11 U.S.C. § 553.  Section 553(a)

provides that, with certain exceptions, whatever right of setoff a creditor has upon filing is

---

[6] There is no binding guidance in the Fourth Circuit.  *Copley* was on appeal to the United States District Court for
the Eastern District of Virginia, but the case was recently remanded to the bankruptcy court to address the sovereign
immunity argument, which was raised for the first time on appeal. *See United States v. Copley*, Case No. 3:16cv207
(E.D. Va. March 31, 2017).  The government attempted to appeal *Sexton*, but the appeal was dismissed as untimely.
*Addison* was not appealed to the Fourth Circuit, because the IRS advises the Solicitor General was not notified of
the adverse ruling in the District Court.  *See* IRS Brief, at p. 17, n. 6.

preserved in bankruptcy.[7] Therefore, Section 553 does not actually create any setoff rights but

merely preserves the setoff rights that exist under applicable nonbankruptcy law.  *See Strumpf*,

516 U.S. at 18–19; *Addison*, 533 B.R. at 525.

As Judge Phillips stated in *Copley*:

> As many courts have observed, there appears to be a conflict between §
> 553, which unqualifiedly preserves the right of offset, and § 522(c), which
> provides that property claimed exempt is not liable for prepetition debts. Most
> courts that have addressed the apparent conflict between § 522(c) and § 553(a)
> have found that a creditor's right of setoff under § 553(a) must give way to a
> debtor's right to exempt and protect assets under § 522(c). *Miller v. United States,*
> 422 B.R. 168, 172 (W.D. Wis. 2010), contains a summary of cases on each side of
> this debate. Cases in which courts have found that the right to exempt property
> trumps the right to setoff include *United States v. Jones (In re Jones),* 230 B.R.
> 875 (M.D. Ala. 1999); *In re Sharp,* 286 B.R. 627, 629 (Bankr. E.D. Ky. 2002); *In
> re Pace,* 257 B.R. 918, 920 (Bankr. W.D. Mo. 2000); *Alexander v. Comm'n, IRS.
> (In re Alexander),* 225 B.R. 145, 149 (Bankr. W.D. Ky. 1998); *In re Wilde,* 85
> B.R. 147, 149 (Bankr. D.N.M. 1988); *Thompson v. Bd. of Trustees of the Fairfax
> Cty. Police Officers Ret. Sys. (In re Thompson),* 182 B.R. 140, 153–54 (Bankr.
> E.D. Va. 1995). A number of more recent decisions have rejected this position.
> *See, e.g. Miller v. United States,* 422 B.R. 168, 172 (W.D. Wis. 2010); *United
> States v. Gould (In re Gould),* 401 B.R. 415 (9th Cir. BAP 2009), *aff'd sub nom.
> Gould v. United States (In re Gould),* 603 F.3d 1100 (9th Cir. 2010). Persuasive
> arguments can be made to support either view.[8]

---

[7] Section 553(a) provides as follows:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does
> not affect any right of a creditor to offset such creditor to the debtor that
> arose before the commencement of the case under this title against a claim of such creditor against
> the debtor that arose before the commencement of the case, except to the extent that--(1) the claim
> of such creditor against the debtor is disallowed; (2) such claim was transferred, by an entity other
> than the debtor, to such creditor --(A) after the commencement of the case; or (B)(i) after 90 days
> before the date of the filing of the petition; and (ii) while the debtor was insolvent (except for a
> setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27), 555, 556, 559,
> 560, or 561); or (3) the debt owed to the debtor by such creditor was incurred by such creditor--
> (A) after 90 days before the date of the filing of the petition; (B) while the debtor was insolvent;
> and (C) for the purpose of obtaining a right of setoff against the debtor (except for a setoff of a
> kind described in section 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27), 555, 556, 559, 560, or
> 561).

11 U.S.C. § 553(a).

[8] A writ of certiorari was denied in *Gould v. U.S.*, 562 U.S. 1030 (2010).   Many courts cite *In re Luongo*, 259 F.3d
323 (5th Cir. 2001), as the leading case of the emerging viewpoint.

*Copley*, 547 B.R. at 183–84.  Other recent cases rejecting the right to exempt property subject to

a right of setoff under the Treasury Offset Program include *In re Gould*, 401 B.R. 415 (BAP 9th

Cir. 2009), *aff'd In re Gould*, 603 F.3d 1100 (9th Cir. 2010), *cert. denied* 562 U.S. 1030 (2010);

*U.S. Dep't of Agriculture Rural Housing Service v. Riley*, 485 B.R. 361 (W.D. Ky. 2012); *In re

Buttrill*, 549 B.R. 197 (Bankr. E.D. Tenn. 2016); *In re Pugh*, 510 B.R. 862 (Bankr. E.D. Wis.

2014); and *In re Bourne*, 262 B.R. 745 (Bank. E.D. Tenn. 2001).

   *Alexander* best explains those cases finding a creditor's right of setoff is subordinate to a

debtor's exemptions rights.   In *Alexander,* the debtor claimed an exemption in his expected 1996

federal income tax refund of $3,450.31.  Thereafter, he received notice that the IRS had set off

the full amount of his refund against a tax liability for a prior year.   *Alexander*, 225 B.R. at 146.

*Alexander* emphasized that 11 U.S.C. § 553(a) provides as follows:

> Except as otherwise provided by this section and in sections 362 and 363 of this
> title, this title does not affect any right of a creditor to offset *a mutual debt owing
> by such creditor to the debtor that arose before the commencement of the case
> under this title against a claim of such creditor against the debtor that arose
> before the commencement of the case.*

*Alexander*, 225 B.R. at 147 (emphasis in original).  The Court, finding mutuality of parties and

obligations, noted that the language of Section 553(a) has been construed as permissive in nature

rather than mandatory, and that "application, when properly invoked before a court, rests in the

discretion of the court, which exercises such discretion under general principles of equity."  *Id.*

(citations omitted).  After finding the prerequisites for setoff were met, *Alexander* observed that

"[w]hat distinguishes this case, however, is the fact that the property against which the IRS

attempts to exercise its right to set-off is *exempt* property of the Debtor."  *Id.* at 147–48

(emphasis in original).  As in this case, part of the exemption claimed under state law was a

refund based on the Earned Income Tax Credit, which in Kentucky has been determined to be in

the nature of public assistance benefits.  *Id.* at 148.   As no objections (including any by the IRS) were asserted in the exemption claimed in the federal income tax refund, the debtor's "federal tax refund became exempt under §522(a)."  *Id.* (citing *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643 (1992) ("unless a party in interest objects, the property claimed as exempt on such list is exempt.")).  As a result, *Alexander* contended that triggered the application of 11 U.S.C. § 522(c).[9]

Section 522(c) provides that property exempted from the bankruptcy estate shall not be liable for any debts arising before the bankruptcy was filed, unless such debt falls into one of the exceptions specified in Sections 522(c)(1) through (3).[10]  Those exceptions did not apply, and they do not apply here. The debtor contended that Section 522(c) prevented the exempted tax refund from being setoff against the prepetition liability because to do otherwise would be to do exactly what Section 522(c) prohibits—make the exempt property liable for a prepetition debt. The rub, as *Alexander* noted, is that "[t]he IRS argues, however, that Section 553, preserving a [c]reditor's nonbankruptcy set-off rights, supersedes Section 522(c)."  *Alexander*, at 148.

---

[9] Section 522(c) provides:

> Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except--(1) a debt of a kind specified in paragraph (1) or (5) of section 523(a) (in which case, notwithstanding any provision of applicable nonbankruptcy law to the contrary, such property shall be liable for a debt of a kind specified in such paragraph); (2) a debt secured by a lien that is--(A)(i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and (ii) not void under section 506(d) of this title; or (B) a tax lien, notice of which is properly filed, (3) a debt of a kind specified in section 523(a)(4) or 523(a)(6) of this title owed by an institution-affiliated party of an insured depository institution to a Federal depository institutions regulatory agency acting in its capacity as conservator, receiver, or liquidating agent for such institution; or (4) a debt in connection with fraud in the obtaining or providing of any scholarship, grant, loan, tuition, discount, award, or other financial assistance for purposes of financing an education at an institution of higher education (as that term is defined in section 101 of the Higher Education Act of 1965 (20 U.S.C. 1001)).

11 U.S.C. § 522(c).

[10] Subsection (c)(4) was added in 2000.

The court then listed numerous cases finding that a creditor's right of setoff under Section 553 must yield to a debtor's right to exempt assets under Section 522, and it adopted that position. *Id.* at 149.  In so doing, the Court found that were the rule otherwise, Section 522(c) would have no meaning and prevent a debtor from exempting property from the reach of creditors possessing a right of offset under Section 553.  To *Alexander*, this construction harmonized Sections 553 and 522 under the statutory construction principle that "when two provisions of a statute are in conflict they should be interpreted in such a fashion as to give meaning to the whole." *Id.* (citations omitted).  Additionally, the court also found that this construction comported with the policies of the Bankruptcy Code to give the debtor a "fresh start," which is a long standing goal of the Bankruptcy Code many times recognized by the Supreme Court. *Id.*[11]  *Alexander* concluded by observing as follows:

> Finally, this Court notes that the legislative history of § 522 supports the conclusion that Congress did not intend that exempt property be liable for discharged tax debts, through set-off or otherwise. One of the versions of § 522(c) that was never enacted by Congress, would have allowed exempt property to remain liable for discharged taxes. Senate Bill 2266; S.R. No. 95–989, 95th Cong. 2nd Sess. 76 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5862. Under that version, the tax refund would have been liable for the payment of Debtor's 1991 tax debt, notwithstanding the fact that the tax debt was a dischargeable debt. Nevertheless, this version was rejected by Congress, thus indicating that Congress "did not intend that exempt property be liable to the payment of dischargeable tax debts." *Monteith,* 23 B.R. at 604.

> The Court notes that the actual language of the rejected provision permitted "the *collection* of dischargeable taxes from exempt assets." The I.R.S. argues that because the Congressional history only indicates that dischargeable tax claims may not be *collected* out of exempt property, there is no indication that Congress intended to prohibit the *set-off* of exempt funds against a dischargeable tax debt. The Court rejects the I.R.S.'s distinction, finding that it exalts form over

---

[11]  "We agree that exemptions in bankruptcy cases are part and parcel of the fundamental bankruptcy concept of a fresh start." *Schwab v. Reilly*, 560 U.S. 770, 791 (2010) (citation omitted); *see Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007).

substance. Whether the I.R.S. asserted control over the funds through the
mechanism of set-off or through a collection process, the result is the same.

*Alexander*, at 150. Not surprisingly, the Debtor in this case asks the Court to follow *Alexander*

down the line.[12]

    The arguments in favor of a finding that Section 553 setoff rights are not subordinate to a

Debtor's exemption rights are detailed in *Bourne*. In *Bourne,* the debtor became obligated on a

loan in connection with the purchase of a manufactured home, guaranteed by the Department of

Housing and Urban Development ("HUD"). The debtor defaulted on the loan, leaving a balance

due to HUD. The debtor had a tax refund due of $2,534.00 as of the date she filed bankruptcy,

and she claimed the tax refund exempt under Tennessee law. The debtor filed for Chapter 7

relief, and without seeking relief from stay, the IRS intercepted the tax refund and set it off

against the unpaid HUD liability.[13]  *Bourne*, 262 B.R. at 748–49.

    *Bourne* first noted that the federal intercept statute "allows the IRS to offset a tax refund

against any debt which the taxpayer may owe a federal agency." *Id.* at 749. Further, "this offset

right trumps an individual's claim of exemption." *Id.* Citing *Bosarge v. United States Dep't of*

*Education*, 5 F.3d 1414 (11th Cir. 1993), *Bourne* observed that the federal intercept statute

makes no allowance for state law personal property exemptions. Since the intercept statute

makes no exceptions for exemptions, *Bourne* found it persuasive that *Bosarge* held that state law

exemptions may not defeat the federal government's setoff rights pursuant to the doctrine of

preemption under the Supremacy Clause of the United States Constitution. *Id.* at 750.[14]

---

[12] *See* Debtor's Brief, at p. 11, n. 3.

[13] *Bourne* also involved a stay violation, but since the offset in this case is against income tax debts excepted from
the stay under 11 U.S.C. § 362(b)(26), that portion of the *Bourne* opinion will not be addressed. Section 362(b)(26)
was enacted after *Bourne* was decided.

[14] This Court is not sold on that argument. Section 522(l) of the Bankruptcy Code sets forth a mechanism for
exempting property, and it too is a federal statute. Specifically, Section 522(l) provides, in part, that "[u]nless a

*Bourne* next turned to Section 522(c), previously discussed in *Alexander* above, which provides in broad terms that "property exempted from the bankruptcy estate as a general rule is not liable for prepetition debts unless the debts fall within certain specified exceptions." *Id.* *Bourne* acknowledged that there appears to be a conflict between Section 553, which preserves the right of offset, and Section 522(c), which provides that property claimed exempt is not liable for prepetition debts. *Id.* at 751. *Bourne* summarized the three basic arguments in favor of exemption rights taking precedence over setoff rights as follows: (1) allowing the exemption rights to prevail under Section 522 gives effect to both Sections 553 and 522, and prevents a nullification of Section 522(c), (2) allowing the exemption over setoff furthers the chief policy of the Bankruptcy Code—providing the debtor with a fresh start, and (3) reviewing the legislative history of Section 522 supports the conclusion that the exemption rights should triumph over the setoff rights. In other words, *Bourne* addressed each of the arguments *Alexander* made in support of its holding.

As to the first argument, *Bourne* held that argument failed because "by giving primary effect to the exemption rights of a debtor, the offset right of a creditor is often completely nullified. . . . It is just as logical to give effect to both provisions by holding that a debtor may claim an exemption which is valid as to all creditors except one having a right of offset." *Id.* at 756. Citing *In re Wiegand*, 199 B.R. 639 (W.D. Mich. 1996), *Bourne* held that:

---

party in interest objects, the property claimed on the list is exempt." *See* 11 U.S.C. § 522(l). Those exemptions may be based on state law, and Section 522(l) gives those state law exemption claims both strength and effect. Such a blanket assertion of the Supremacy Clause, without more, seems to be an overreach, especially when it fails to account for the interplay with other federal statutes, like Section 522(l). Conversely, part of this Court's ruling in *Addison* was based on commentary in *In re Sexton*, 508 B.R. at 656, which held that "it is settled law in the Fourth Circuit that a properly claimed exemption trumps a creditor's right to offset mutual prepetition debts and liabilities." In support of that statement, *Sexton* relied on *Moore v. Dep't of Housing and Urban Dev. (In re Moore)*, 350 B.R. 650 (Bankr. W.D. Va. 2006), and *In re Ward,* 210 B.R. 531 (Bankr. E.D. Va. 1997). Upon further review of those cases, there being no Fourth Circuit case on point, and the extensive briefing in this case, the Court agrees with the IRS that the law is no so settled.

> [a]llowing setoff against exempt property would not undermine the general policy
> behind the Bankruptcy Code because a debtor will not be denied the ability to
> hold property exempt from liability for pre-petition debts. Only creditors who
> possess a valid setoff right can offset their obligation with a debtor's exempt
> property. Under 11 U.S.C. § 522, debtor can still exempt property from the reach
> of all other creditors possessing pre-petition claims.

*In re Bourne*, 262 B.R. at 756–57; *In re Wiegand*, 199 B.R. at 642.

The second argument, deference to the "fresh start" goals of the Bankruptcy Code, also failed in *Bourne.* The court found it compelling that there were, at the time, eighteen categories of debts excepted from discharge under 11 U.S.C. § 523(a), and that a debtor's fresh start is not always paramount, and is often subordinated to, other societal goals and economic objectives. *Id.* at 757. "Just as the Bankruptcy Code's general policy in favor of a fresh start must give way to the specific exceptions to discharge set forth in the Code, it must also bow to the more specific provision preserving setoff found in § 553." *Id. See, e.g.*, *In re Alibatya*, 178 B.R. 335, 337 (Bankr. E.D.N.Y. 1995) ("Courts are bound by these Congressional judgments that general bankruptcy policy give way to more specific policy considerations.").

The last argument, the legislative history of Section 522, also failed in *Bourne*. As to the legislative history argument, *Bourne* observed that:

> [I]t must be noted that the legislative history to this provision does not mention
> setoff rights in any respect whatsoever or whether they may be defeated by an
> exemption. The history simply reveals that in connection with the enactment of
> the Bankruptcy Act of 1978, Congress debated whether exempt property should
> remain liable for all taxes or just nondischargeable taxes, ultimately limiting
> liability to taxes excepted from discharge under § 523(a)(1). However, the
> conclusion that exempt property is not liable for discharged taxes does not
> necessarily preclude offset against property claimed exempt. As the *Wiegand*
> court recognized, there is a distinction between collecting on a unilateral debt and
> offsetting a mutual obligation. *In re Wiegand,* 199 B.R. at 642. The majority
> courts relying on legislative history may have been persuaded by the fact that the
> IRS was seeking an offset against the debtor's discharged tax liability. *See In re*
> *Jones,* 230 B.R. at 876; *In re Alexander,* 225 B.R. at 147; *In re Monteith,* 23 B.R.
> at 602. If debts other than tax obligations had been involved, the legislative
> history would have provided no basis for the denial of offset.

*Id.*

*Bourne* summed up its critique of the cases holding that exemption rights triumph over

setoff rights by concluding that the debtor in that case had no greater exemption rights with

respect to her tax refund than she would have had if the bankruptcy case was not filed.  Citing

*Collier on Bankruptcy*, *Bourne* noted that "[i]f rights of setoff were not preserved in bankruptcy,

creditors might be more inclined to exercise a right of setoff under applicable nonbankruptcy law

at an earlier stage, rather than risk losing the right altogether in a subsequent bankruptcy

proceeding.  By recognizing and protecting the right, the Bankruptcy Code removes an incentive

that might otherwise lead a creditor to take precipitous action." *Id*. at 757–58; 5 *Collier on

Bankruptcy* ¶ 553.02[2] (15th ed. rev. 2000).

        *Buttrill* expanded on *Bourne*, stating as follows:

> This court is not prepared to go so far as to hold that there is no property
> of the estate if there is an overpayment in existence at the time of filing, but the
> court does find that there is no indefeasible property interest which a debtor may
> exempt. The court finds the *Bourne* decision to be the more persuasive analysis of
> this issue. The debtor has a property interest in the tax refund, but it is a
> contingent interest that may be defeated by a remedy acknowledged and
> preserved by the Bankruptcy Code. The right of [the federal agency creditor]
> under the [Treasury Offset Program] was preserved and the debtor's exemption of
> the refund only applied to the amount that remained after the statutory offsets
> were applied.

*In re Buttrill*, 549 B.R. 197, 208 (Bankr. E.D. Tenn. 2016).

        In this case, which involves the setoff of an income tax liability against an income tax

overpayment, and which is excepted from the automatic stay under Section 362(b)(26), the Court

will reach a result similar to that of *Bourne* and *Buttrill*, but for different reasons—ones not

always addressed.  First, Section 506(a)(1) of the Bankruptcy Code provides, in part, as follows:

> (a)(1) An allowed claim of a creditor secured by a lien on property in which the
> estate has an interest, *or that is subject to setoff under section 553 of this title, is a
> secured claim to the extent of the value of such creditor's interest in the estate's*

17

> *interest in such property, or to the extent of the amount subject to setoff*, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

11 U.S.C. § 506. That secured status is subject to adequate protection. *In re Mason*, 79 B.R. 786, 788 (Bankr. N.D. Ill. 1987)("a creditor stayed from exercising a valid right to setoff must be granted "adequate protection"). [15] In furtherance of that goal, Section 553(a) provides that "[e]xcept as otherwise provided in this section and in sections 362 and 363 of this title, *this title* does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case" (emphasis added), unless certain exceptions apply not found here. "*This title*" means *all* of Title 11 of the U.S. Code, but for the enumerated exceptions, and Section 522(c) is not one of them.[16] Thus, the preservation of the setoff right should be paramount to the right to claim an exemption giving full accord to the statutory language. Further, such a reading comports with familiar rules of statutory construction, as it is well established that "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.,* 530 U.S. 1, 6 (2000) (internal quotation marks omitted) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989), in turn quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)).

---

[15] In this case, the creditor was not stayed from exercising its setoff rights under 11 U.S.C. § 362(b)(26).

[16] Although a right of setoff has secured status under Section 506(a), it is not a "lien" within the scope of 11 U.S.C. § 522(c)(2), which is one of the delineated exceptions to exempt status under Section 522(c). *See Bourne*, 262 B.R. at 750–51.

Second, some courts have cited *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992), for the proposition that if the debtor claims a property interest in a tax refund or overpayment and proceeds to claim an exemption in that property interest— and no one objects—the claim of exemption should prevail.  *Taylor* provides generally that a failure to timely object to the validity of an exemption is fatal to the objection.[17]  However, a debtor cannot bootstrap himself into free and clear ownership of a property interest by claiming an exemption in something subject to a valid Section 553 offset, and then claim the exemption invalidated the offset because no one objected.  The debtor has to take affirmative action to challenge or void the offset in some fashion.  *See In re Shortt*, 277 B.R. 683, 692 (Bankr. N.D. Tex. 2002) ("Thus, while the Debtors claimed the 2000 tax refund as exempt, they were not legally entitled to any refund and their attempt to exempt it is of no legal consequence.").[18]

The final and most difficult issue is how does this Court reconcile its ruling in *Addison*, which was affirmed on appeal to the District Court?   It is difficult, but the District Court in *Addison* did not address the interplay between Sections 522(c) and 553.  Instead, the focus in *Addison* at the District Court level was whether there was a stay violation, because the United States set off a tax refund against a non-tax debt, one owed to the Department of Agriculture.  Such action implicated 11 U.S.C. § 362(b)(26), which only excepted from the automatic stay the

---

[17] "Section 522(l) states the procedure for claiming exemptions and objecting to claimed exemptions as follows: 'The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. . . . Unless a party in interest objects, the property claimed as exempt on such list is exempt.'"  *Taylor*, 503 U.S. at 642, citing 11 U.S.C. § 522(l).

[18] Following *Luongo* and *Bourne*, *Shortt* essentially found in a Treasury Offset Program case that property can only be exempted from the estate if it became part of the estate.  More specifically, "[o]nce a right of offset preserved by § 553 has been established in a debt owed to the estate, a debtor may claim an exemption only in the balance of the debt turned over to the estate after the offset has been exercised. Thereafter, the exempted property is protected from all other prepetition debts pursuant to § 522(c)." *Shortt*, 277 B.R. at 692, n. 3, citing *Bourne*, 262 B.R. at 756.

setoff of an income tax refund by a governmental unit against an income tax liability.  Because

the government setoff the debtor's tax refund in *Addison* against a non-income tax liability

without first obtaining relief from stay, this Court found a stay violation and the District Court

affirmed.  The District Court in *Addison* did observe that the government's argument that "the

overpaid funds belong to the government until it decides to issue a refund . . . overstates the

government's entitlement to the overpaid funds."  *Addison*, 2016 WL 223771, at *3.  However,

the District Court further confined its ruling to stating that "if a bankruptcy stay is instituted prior

to the actual offset, then the overpaid funds are protected by the stay, and the government must

be treated like any other creditor of the debtor."  *Id.*  Because this case involves the setoff of a

tax refund against an *income tax liability,* not a setoff against a non-income tax liability, Section

362(b)(26) provides an express exception to the stay of Section 362(a) and operates to allow the

setoff.  That Code section did not apply in *Addison*, because that case addressed only the

application of a setoff against a non-tax debt.  *Addison's* essential holding, that the stay of

Section 362(a) would operate to prevent such a non-income tax liability setoff, is given full

deference.[19]

---

[19] Furthermore, this opinion does not support the government's assertion that the debtor has no interest at all in his tax refund. Instead as shown herein, the value of the debtor's interest is reduced when the government has valid offset rights under section 553. The property interest is not eliminated, but subordinated to the tax liability offset.

CONCLUSION

For all of the above reasons, the Court concludes that the IRS offset of the Debtor's

income tax refund in this case was proper and within the bounds of 11 U.S.C. § 553.  For that

reason, the IRS's motion for summary judgment will be granted and the adversary proceeding

dismissed.  The Debtor's motion for summary judgment will be denied.

A separate Order will be entered contemporaneously herewith.

Decided this 3rd day of April, 2017.


_____
UNITED STATES BANKRUPTCY JUDGE